IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:23-cr-30086-1-DWD |
| ) | |
| DARRION A. BLASSINGAME, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM & ORDER

**DUGAN, District Judge**:

Before the Court is Defendant Blassingame's Motion to Suppress and Memorandum in Support thereof (collectively, "Motion to Suppress"). (Docs. 55 & 56). The Government filed a Response in Opposition to the Motion to Suppress. (Doc. 57). For the reasons explained below, the Motion to Suppress is **DENIED**.

I. BACKGROUND

On July 28, 2023, an Indictment was returned against Defendant Blassingame and co-Defendant Kenneth T. Hardin. (Doc. 1). Count I charged Defendants, under 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii), with possession with intent to distribute fentanyl, methamphetamine, and marijuana. (Doc. 1, pg. 1). Count II charged Defendants, under 18 U.S.C. § 924(c)(1)(A), with possession of a firearm in furtherance of a drug trafficking crime, including: a Glock semiautomatic pistol, model 41 Gen 4; a Glock semiautomatic pistol, model 17; and a Kel-Tec, semiautomatic pistol, model PLR-16. (Doc. 1, pg. 2).

On June 5, 2024, Defendant Blassingame filed the instant Motion to Suppress. (Docs. 55 & 56). The Government filed its Response to the Motion to Suppress on June 20, 2024. (Doc. 57). The factual basis for the Motion to Suppress, which appears to be largely undisputed based upon the parties' filings, is summarized immediately below.[1] [2]

On December 22, 2022, the dispatch for the Fairview Heights Police Department received a phone call from a local business about Defendant Blassingame, who had requested assistance in repairing a tire on his vehicle. (Docs. 55, pg. 1; 56, pg. 1; 57, pg. 2). The caller indicated the vehicle's occupants were two black males wearing facemasks. (Docs. 55, pg. 1; 56, pg. 1; 57, pg. 2). The caller also indicated that the vehicle did not have valid registration. (Docs. 55, pg. 1; 56, pg. 1).[3] Further, the caller indicated two pistols and a large bag were observed in the vehicle. (Docs. 55, pg. 1; 56, pg. 1; 57, pg. 2).

Police officers responded to the parking lot of a local business, where Defendant Blassingame was attempting to change the tire on the rear driver-side of the vehicle.

---

[1] Under the Court's Case Management Procedures, "[g]enerally, motions to dismiss indictments and motions to suppress evidence will be set for hearing." *See* Case Management Procedures of District Judge David W. Dugan, pg. 13. However, in its Response, the Government requests a denial of the Motion to Suppress "without a hearing," as "there are no factual issues…on this matter." (Doc. 57, pgs. 1, 12). Therefore, on June 25, 2024, the Court entered an Order that noted the Government's position and directed Defendant "to inform the Court whether the pending Motion to Suppress (1) should be the subject of a hearing, or (2) may be resolved based on the current record." (Doc. 59). In compliance with that Order, Defendant Blassingame filed a Response, indicating: "Counsel is in agreement with the government that due to the entire incident of the search of Defendant's car being recorded by police video, the matter can be determined without an evidentiary hearing. However, counsel would be happy to argue the merits of the case, should the court deem that to be of assistance." (Doc. 63). Accordingly, the Court finds it is appropriate to resolve the Motion to Suppress on the current record without a hearing or oral argument.

[2] The Government manually filed "Exhibit 1—Dash Camera Footage" of Officer Callahan of the Fairview Heights Police Department. (Doc. 58). The Court viewed Exhibit 1, then incorporated facts and timestamp citations from the footage into the summary of the basis for the Motion to Suppress. Notably, there was a slight lack of synchronicity between the audio and video in Exhibit 1. Out of an abundance of caution, the Court brought this issue to the parties' attention via email. Each party stated they did not notice a similar issue. Also, neither party objected to the Court's consideration of Exhibit 1, as submitted.

[3] This was subsequently found to be untrue. (Doc. 55, pg. 2).

(Docs. 55, pg. 1; 56, pg. 1; 57, pg. 2; Exhibit 1, :39). It was still daylight at the time. (Exhibit 1, generally). Co-Defendant Hardin immediately exited the passenger-side of the vehicle when Officer Callahan drove onto the parking lot. (Docs. 56, pg. 1; 57, pg. 2; Exhibit 1, :45). An unknown man was assisting Defendant Blassingame in his attempt to change the tire while another unknown man was watching. (Exhibit 1, :45). Officer Callahan asked if everyone was all right before announcing that she was informed Defendants could need assistance with the tire change. (Exhibit 1, :44 to :51). Officer Callahan approached the area where Defendant Blassingame and the unknown man were attempting to change the tire. (Docs. 55, pg. 1; 56, pg. 1; 57, pg. 2; Exhibit 1, :59 to 1:16). Defendant Blassingame allegedly indicated they were not in need of assistance. (Docs. 55, pg. 1; 56, pg. 1).

While Officer Callahan watched Defendant Blassingame attempt to change the tire, Sergeant Belba of the Fairview Heights Police Department approached the passenger-side of the vehicle and looked through its window. (Docs. 55, pgs. 1-2; 56, pg. 1; 57, pg. 2; Exhibit 1, 1:33 to 2:22). Sergeant Belba allegedly smelled marijuana emitting from the vehicle. (Docs. 55, pg. 2; 57, pg. 2). He then proceeded to the front of the vehicle, where he looked through the front windshield. (Exhibit 1, 2:22 to 2:31). Through the passenger-side window or the front windshield, Sergeant Belba allegedly observed what appeared to be a bag of marijuana and firearms in plain view. (Docs. 55, pg. 2; 56, pg. 2; 57, pgs. 2-3; Exhibit 1, 17:30, 27:22, 35:16). Defendant Blassingame was detained and searched, but no contraband was found on his person. (Docs. 55, pg. 2; 57, pg. 3; Exhibit 1, 2:31 to 8:20). He was detained before completing the tire change. (Exhibit 1, generally).

Co-Defendant Hardin was detained and searched, at which time what appeared to be fentanyl and marijuana were found on his person. (Doc. 57, pg. 3; Exhibit 1, 2:41 to 6:05).

Thereafter, the police officers conducted a warrantless search of the vehicle. (Docs. 55, pg. 2; 57, pg. 3; Exhibit 1, 7:27 to 54:44). They recovered 3 firearms, one of which was found during the search to be stolen. (Docs. 55, pg. 2; 57, pgs. 3-4; Exhibit 1, 10:33, 11:26, 21:49). The police officers also recovered marijuana, methamphetamine, fentanyl, drug paraphernalia, ammunition, U.S. currency, a cutting agent, and capsules. (Docs. 55, pg. 2; 57, pgs. 3-8; Exhibit 1, 8:34 to 8:56, 11:06 to 11:26, 19:58, 23:22 to 24:06, 28:21, 37:11).[4] Defendant Blassingame was found to be a felon at the time of the search. (Exhibit 1, 23:02, 29:31). The vehicle was later towed and impounded. (Doc. 57, pg. 8; Exhibit 1, 41:31).

Having summarized this factual basis, the Court now resolves the arguments stated in Defendant Blassingame's Motion to Suppress and the Government's Response.

## II. ANALYSIS

In his Motion to Suppress, Defendant Blassingame argues this case is unusual because his vehicle was not searched after a traffic stop and the police officers did not obtain consent or a warrant for their search. (Docs. 55, pg. 2; 56, pg. 1). He also argues the police officers lacked probable cause to search the vehicle because marijuana is legal in Illinois, the windows to the vehicle were up, and there was no indication that he could not possess a firearm. (Docs. 55, pg. 2; 56, pg. 3). Further, in his view, the automobile exception to the warrant requirement does not apply since the vehicle was unoccupied,

---

[4]The Government provided photographs of the evidence in the vehicle. (Doc. 57, pgs. 4-8).

undrivable, and on a private parking lot when the police officers arrived during the tire change. (Docs. 55, pg. 2; 56, pgs. 2-3). Defendant Blassingame claims he declined assistance from the police officers. (Doc. 56, pg. 2). From these arguments, Defendant Blassingame concludes the search and seizure violated the Fourth Amendment to the U.S. Constitution, requiring the suppression of the evidence. (Docs. 55, pgs. 2-3; 56, pg. 3).

In its Response, the Government argues the police officers had a reasonable suspicion to investigate the circumstances reported by the caller from the local business, *i.e.*, to investigate the claim that the caller observed two black males wearing facemasks in a vehicle with two pistols, a large bag, and no valid registration. (Docs. 55, pg. 1; 56, pg. 1; 57, pgs. 2, 8). Also, the Government suggests the evidence was seized pursuant the plain view doctrine after Defendant Blassingame's arrest. (Doc. 57, pgs. 1, 8-9). That is, Sergeant Belba's observation of the firearms and marijuana, which was not in a proper storage container or inaccessible, established probable cause to arrest Defendants, seize the evidence, and to search the vehicle. *See* 625 ILCS 5/11-502.15; (Doc. 57, pgs. 1, 3, 9-10).

Even without the call to dispatch, the Government notes Defendant Blassingame's vehicle was parked in a public place where Defendants did not have an expectation of privacy. (Doc. 57, pg. 9). Also, while there may be a question about whether Sergeant Belba first viewed "the improperly packaged marijuana" and firearms in plain view from the passenger-side or the front of the vehicle, Defendant Blassingame does not dispute Sergeant Belba first viewed that evidence from outside of the vehicle. (Doc. 57, pg. 9). The Government also argues Sergeant Belba smelled the odor of marijuana outside of the vehicle, which may still provide probable cause under Illinois law. (Doc. 57, pgs. 9-10).

Similarly, the Government argues the automobile exception to the warrant requirement, which applies even when a vehicle is undrivable, rendered the search and seizure permissible under the Fourth Amendment to the U.S. Constitution. (Doc. 57, pgs. 1, 10-11). Again, the warrantless search by the police officers was arguably authorized by the probable cause obtained under the plain view doctrine and the involvement of a vehicle. (Doc. 57, pg. 11). Finally, once there was probable cause to arrest Defendants, the Government suggests the discovery of the evidence in the vehicle was inevitable. (Doc. 57, pg. 12). It emphasizes that the vehicle was towed and impounded following Defendants' arrest. (Doc. 57, pg. 12). Therefore, if the vehicle had not been searched at the scene, it would have certainly been searched at the impoundment lot. (Doc. 57, pg. 12).

The Fourth Amendment to the U.S. Constitution, in part, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A search occurs when (1) police officers enter a constitutionally protected area, such as a home or its curtilage, to gather evidence, or (2) intrude upon a person's legitimate expectation of privacy in a particular situation. *U.S. v. Lewis*, 38 F.4th 527, 533-35 (7th Cir. 2022) (citing *Florida v. Jardines*, 569 U.S. 1, 6 (2013); *Katz v. U.S.*, 389 U.S. 347, 361 (1967)).

Police officers generally cannot perform a search without a warrant that is supported by probable cause. *Id.* at 533 (citing *Lange v. California*, 594 U.S. ----, 141 S. Ct. 2011, 2017 (2021)); *see also U.S. v. Rosario*, 5 F.4th 706, 710-11 (7th Cir. 2021) (noting the touchstone of the Fourth Amendment analysis is whether a person has a constitutionally protected and reasonable expectation of privacy, such that a warrant is required before a

search is conducted); *Henry v. Hulett*, 969 F.3d 769, 776-77 (7th Cir. 2020) (noting this same principle and emphasizing that the Fourth Amendment only protects expectations of privacy that society is prepared to recognize as reasonable). Indeed, warrantless searches are *per se* unreasonable under the Fourth Amendment. *U.S. v. Salazar*, 69 F.4th 474, 477 (7th Cir. 2023) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). Therefore, if police officers obtain evidence in violation of the Fourth Amendment, then the usual remedy is for the Court to exclude the evidence and all fruits of the violation from the trial. *U.S. v. McGill*, 8 F.4th 617, 622 (7th Cir. 2021) (citing *Utah v. Striefl*, 579 U.S. 232, 237-38 (2016)).

Of course, the above-stated constitutional rule is subject to a few familiar exceptions, which the Government must show are applicable by a preponderance of the evidence. *Id.* (quoting *Gant*, 556 U.S. at 338); *U.S. v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009). Here, the exceptions relating to evidence found in plain view, to automobiles, and to searches incident to lawful arrests are primarily at issue. As discussed in detail below, the Court finds by a preponderance of the evidence that each such exception to the warrant requirement independently applies under the circumstances of this case.[5] Before delving into an application of those exceptions to the warrant requirement, however, the Court notes that Fourth Amendment issues "call[] for a fact-intensive case-by-case analysis." *Salazar*, 69 F.4th at 477 (citing *U.S. v. Yang*, 39 F.4th 893, 899 (7th Cir. 2022)). To

---

[5] The Government also argues the evidence should not be suppressed due to the exception to the warrant requirement related to the inevitable discovery of evidence. More specifically, the Government argues the evidence should not be suppressed because it would have inevitably been discovered when the vehicle was towed and impounded by law enforcement. (Doc. 57, pgs. 11-12). Without additional evidentiary support, however, the Government's abbreviated argument does not allow for a conclusion on this exception to the warrant requirement. *See U.S. v. Cartwright*, 630 F.3d 610, 613-16 (7th Cir. 2010) (discussing and applying the inevitable discovery doctrine in the context of an impounded vehicle).

assess an alleged Fourth Amendment violation, the Court must balance the need for the search against the invasion of rights caused by the search. *Henry*, 969 F.3d at 777.

## A. The Plain View Doctrine

First, under the plain view doctrine, police officers may search and seize evidence without a warrant if they (1) are lawfully present at the place of the search and seizure, (2) the evidence is actually in plain view, and (3) the incriminating nature of the evidence is immediately apparent to the police officers. *McGill*, 8 F.4th at 622 (citing *U.S. v. Raney*, 342 F.3d 551, 558-59 (7th Cir. 2003)). As to the first element, police officers may "see what may be seen 'from a public vantage point where [they have] a right to be.' " *Florida v. Riley*, 488 U.S. 445, 449 (1989) (quoting *California v. Ciraolo*, 476 U.S. 207 (1986)); *accord U.S. v. Contreras*, 820 F.3d 255, 261 (7th Cir. 2016). In other words, evidence that a person knowingly exposes to the public is not protected by the Fourth Amendment. *Contreras*, 820 F.3d at 261 (quoting *Riley*, 488 U.S. at 449); *see also U.S. v. Dunn*, 480 U.S. 294, 304 (1987) (noting the holding in *Ciraolo* was based "on the premise that the Fourth Amendment 'has never been extended to require law enforcement officers to shield their eyes when passing…on public throughfares.' "). Also, in the same vein, police officers may approach "any part of private property that is otherwise open to visitors." *Contreras*, 820 F.3d at 261 (citing *U.S. v. LePage*, 477 F.3d 485, 488 (7th Cir. 2007)). When doing so, police officers may look through windows, doors, and other openings that are protected by the Fourth Amendment. *Id*. (citing *Dunn*, 480 U.S. at 304). Finally, as to the third element, the incriminating nature of evidence is immediately apparent if there is probable cause to believe the evidence is contraband or is linked to criminal activity. *McGill*, 8 F.4th

at 622 (quoting *U.S. v. Cellitti*, 387 F.3d 618, 624 (7th Cir. 2004)). The reasoning for the plain view doctrine, as an exception to the warrant requirement, is grounded in the notion that neither a police officer's observation nor seizure of evidence that is in plain view constitutes an invasion of privacy. *See U.S. v. Cherry*, 920 F.3d 1126, 1137 (7th Cir. 2019).

In this case, it was lawful for the police officers to be present on the parking lot near Defendant Blassingame's vehicle, where, importantly, he did not have a reasonable expectation of privacy. *See McGill*, 8 F.4th at 622; *Lewis*, 38 F.4th at 533-35; *Rosario*, 5 F.4th at 710-11; *Henry*, 969 F.3d at 776-77; *see also Kosyla v. City of Des Plaines*, 256 Fed. App'x 823, 825 (7th Cir. 2007) (finding the plaintiff did not have a reasonable expectation of privacy in a parking lot, which was a common area shared with other tenants); *U.S. v. Shaffers*, No. 17-cr-438, 2018 WL 3141825, *5 (N.D. Ill. June 26, 2018) (same). The police officers were responding to a caller from a local business who reported seeing two pistols and a large bag in a vehicle without valid registration. (Docs. 55, pg. 1; 56, pg. 1; 57, pg. 2). Therefore, regardless of whether the parking lot was public or private property, the police officers could enter the parking lot to investigate the circumstances of that call.

As noted above, once the police officers were legally at their vantage point on the parking lot, they were not required to shield their eyes to what was in plain view in Defendant Blassingame's vehicle. *See McGill*, 8 F.4th at 622; *Riley*, 488 U.S. at 449; *Contreras*, 820 F.3d at 261. Sergeant Belba could approach the vehicle and look through its windows to observe what was exposed for the broader public to see, namely, the bag of marijuana and firearms. *See Contreras*, 820 F.3d at 261; *Dunn*, 480 U.S. at 304; *see also Brown*, 460 U.S. at 740 ("There is no legitimate expectation of privacy…shielding

that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers."); *Vargas* 2015 WL 13850021 at *4 (noting the law does not recognize the curtilage of a vehicle); (Doc. 57, pgs. 4-5). Again, it was a large bag and firearms, contained in a vehicle without valid registration, that the caller from the local business reported viewing. (Docs. 55, pg. 1; 56, pg. 1; 57, pg. 2). And, notably, it is quite likely that Officer Belba observed the marijuana and firearms in a substantially similar manner as the caller from the local business, who, at the time, was merely a member of the general public who had occasion to interact with Defendant Blassingame near the vehicle. As the above authorities make clear under these circumstances, no special weight is accorded to Sergeant Belba's status as a police officer. Also, it makes no difference whether Sergeant Belba viewed the evidence through the passenger-side window or the front windshield, as his observations were undisputedly made from outside of the vehicle when the evidence was in plain view. (Doc. 57, pg. 9).

Finally, the incriminating nature of the evidence was immediately apparent to Sergeant Belba. *See McGill*, 8 F.4th at 622. While marijuana is generally legal in Illinois, it was immediately apparent that the bag of marijuana was not permissibly possessed on the Illinois roadways. Section 11-502.15(b) and (c) of the Illinois Vehicle Code provides:

> (b) No driver may possess cannabis within any area of any motor vehicle upon a highway in this State except in a secured, sealed or resealable, odor-proof, child-resistant cannabis container that is inaccessible.
>
> (c) No passenger may possess cannabis within any passenger area of any motor vehicle upon a highway in this State except in a secured, sealed or resealable, odor-proof, child-resistant cannabis container that is inaccessible.

625 ILCS 5/11-502.15(b), (c); *see also* 410 ILCS 705/10-35(a)(2)(D) ("This Act does not permit any person to engage in, and does not prevent the imposition of any civil, criminal, or other penalties for engaging in, any of the following conduct…possessing cannabis…in a vehicle not open to the public unless the cannabis is in a reasonably secured, sealed or resealable container and reasonably inaccessible while [it] is moving.").

The marijuana was obviously within the area of a motor vehicle, including within the passenger area, upon the highway in Illinois without being inaccessible and confined to "a secured, sealed or resealable, odor-proof, child-resistant cannabis container." *See* 625 ILCS 5/11-502.15(b), (c). Therefore, at a minimum, Sergeant Belba had probable cause to believe it was linked to criminal activity, *i.e.*, to a Class A misdemeanor for the knowing violation of § 11-502.15(b) and (c). *See id.* § 11-502.15(d); *McGill*, 8 F.4th at 622.

Also, while the Government does not explicitly make such an argument, the Court notes that a similar analysis could apply to the firearms that Sergeant Belba observed in plain view. For example, in Illinois, it is unlawful to knowingly carry or possess a pistol, revolver, stun gun, taser, or other firearm in a vehicle unless the weapon is broken down in a nonfunctioning state, not immediately accessible, unloaded and enclosed in a case or specified box or container by a person with a valid Firearm Owner's Identification Card, or carried or possessed in accordance with the Firearm Concealed Carry Act by a person with a valid license under that Act. *See* 720 ILCS 5/24-1(a)(4). With a concealed carry license, a person may "carry a loaded or unloaded concealed firearm, *fully concealed or partially concealed*, on or about his or her person," and "keep or carry a loaded or unloaded *concealed firearm* on or about his or her person within a vehicle." 430 ILCS 66/10(c)

(Emphasis added.). However, "concealed firearm" means "a loaded or unloaded handgun carried on or about a person completely or mostly concealed from view of the public or on or about a person within a vehicle." *Id.* at § 5. And, except as otherwise provided, a licensee who violates the Firearm Concealed Carry Act is guilty of a Class A or Class B misdemeanor. *Id.* at § 70(e). Here, it appears indisputable that the firearms, observed in Defendant Blassingame's vehicle by Sergeant Belba, were not properly concealed within the meaning of these statutory provisions. *See* 430 ILCS 66/5, 10(c).

As such, the Court finds the plain view doctrine applies as an exception to the warrant requirement, allowing the use of the marijuana and firearms as evidence at trial.

### B. The Automobile Exception

Second, under the automobile exception to the warrant requirement, police officers may search a vehicle if they have probable cause to believe that it contains evidence of criminal activity or contraband. *U.S. v. Paige*, 870 F.3d 693, 702 (7th Cir. 2017) (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *Carroll v. U.S.*, 267 U.S. 132, 153 (1925)); *U.S. v. Washburn*, 383 F.3d 638, 641 (7th Cir. 2004) (collecting cases). The probable cause extends to all areas in the vehicle where the contraband or evidence of criminal activity may be found, including to closed containers, packages, compartments, and trunks. *Zahursky*, 580 F.3d at 523 (citing *U.S. v. Ross*, 456 U.S. 798, 818-19 (1982); *U.S. v. Scott*, 516 F.3d 587, 589 (7th Cir. 2008)). The justification for this exception is twofold—(1) the "ready mobility" of a vehicle renders an "immediate intrusion" necessary to prevent the destruction of evidence, and (2) there is a lesser expectation of privacy in a vehicle. *Id.* at 522 (quoting *Washburn*, 383 F.3d at 641). The Seventh Circuit has "held that as long as the

[vehicle] 'was inherently, even if not immediately, mobile, the application of the automobile exception was still valid based on the diminished expectation of privacy in one's vehicle.' " *Id.* (quoting *Washburn*, 383 F.3d at 641). In fact, the Seventh Circuit has noted "the Supreme Court, on numerous occasions, has sustained a search justified by the automobile exception in which the inherent mobility of an automobile was not at issue." *U.S. v. Matthews*, 32 F.3d 294, 299 (7th Cir. 1994) (collecting cases). It went on to conclude that, "[c]learly…the mobility of the vehicle is not essential to [an] application of the automobile exception" due to the diminished expectation of privacy in a vehicle. *Id.*

Here, at a minimum, the police officers had probable cause to search Defendant Blassingame's vehicle for further evidence of criminal activity under the Illinois Vehicle Code, namely, for additional marijuana that was not properly possessed within a vehicle. *See* 625 ILCS 5/11-502.15(b), (c); *Paige*, 870 F.3d at 702; *Washburn*, 383 F.3d at 641. More specifically, the police officers could permissibly search any area of the vehicle, including the passenger area, where marijuana could be possessed without "a secured, sealed or resealable, odor-proof, child-resistant cannabis container that [wa]s inaccessible," including in closed containers, packages, compartments, and the trunk. *See* 625 ILCS 5/11-502.15(b), (c); *Zahursky*, 580 F.3d at 523. And, although this level of suspicion was sufficient to allow the police officers to seize the other evidence at issue, the Court notes that what appeared to be fentanyl and marijuana were found on co-Defendant Hardin's person prior to the search of the vehicle. (Doc. 57, pg. 3). During the search of the vehicle, at least one of the firearms was determined to be stolen. (Docs. 55, pg. 2; 57, pgs. 3-4; Exhibit 1, 10:33, 11:26, 21:49). Upon discovering these facts, the police officers also had

probable cause to search for this other contraband and related evidence of criminal activity, wherever it could be found in the vehicle. *See Zahursky*, 580 F.3d at 523.

In reaching these conclusions, the Court rejects Defendant Blassingame's argument, as have other courts before it, that the applicability of the automobile exception is contingent upon whether the vehicle was physically occupied or immediately mobile at the time. *See Zahursky*, 580 F.3d at 522; *Matthews*, 32 F.3d at 299; *see also Washburn*, 383 F.3d at 642 (holding neither the defendant's inaccessibility to his van nor its location in a hotel parking lot invalidated an application of the automobile exception). It is notable, though, that each justification for the automobile exception is satisfied—(1) the inherent mobility of the vehicle rendered an immediate intrusion necessary because Defendant Blassingame could have finished changing the tire before a warrant was obtained, and (2) he had a lesser expectation of privacy in the vehicle. *See Zahursky*, 580 F.3d at 522.

For these reasons, the Court finds the automobile exception to the warrant requirement applies in this case, such that the discovered evidence may be used at trial.

### C. The Search Incident to a Lawful Arrest

Third, as an incident to a lawful arrest, police officers may conduct a warrantless search of a vehicle if the arrestee was within reaching distance of the glovebox at the time of the search *or* it is reasonable to believe that the vehicle contains evidence of the offense of arrest. *U.S. v. Reedy*, 989 F.3d 548, 555 (7th Cir. 2021) (quoting *Gant*, 556 U.S. at 351); *accord Paige*, 870 F.3d at 702. In this way, the level of suspicion required for the warrantless

search, *i.e.*, the reasonable belief, is tied to the offense of arrest. *Paige*, 870 F.3d at 702.[6] The prerequisite for this exception is satisfied when the police officers have probable cause for the arrest, meaning the totality of the facts and circumstances within the police officers' knowledge is sufficient for a prudent person of reasonable caution to believe that the suspect is committing, is about to commit, or has already committed a violation of the law. *Id.* at 699-700 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (7th Cir. 1979)).

Here, as discussed above, the police officers had probable cause to arrest Defendant Blassingame for a Class A misdemeanor under § 11-502.15(b) and (c). *See Paige*, 870 F.3d at 699-700. Therefore, they could also conduct a warrantless search of Defendant Blassingame's vehicle based on the reasonable belief that it contained further evidence related to that offense, *i.e.*, additional marijuana that was not properly possessed within the vehicle. *See Reedy*, 989 F.3d at 55; *Paige*, 870 F.3d at 702. As a result, the Court finds the exception to the warrant requirement for searches incident to lawful arrests applies in this case, such that the evidence discovered in the vehicle may be used at trial.

### III. CONCLUSION

For the reasons explained above, the Motion to Suppress is **DENIED**.

---

[6]The Seventh Circuit has noted searches based upon lawful arrests and searches based upon the automobile exception are interrelated but not necessarily identical. *See Paige*, 870 F.3d at 702 (quoting *U.S. v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014)). The Court emphasizes that searches incident to lawful arrests merely require a *reasonable belief* that the vehicle contains evidence of the offense of arrest while searches based upon the automobile exception require *probable cause* that the vehicle contains evidence of criminal activity. *Id.* (quoting *Gant*, 556 U.S. at 346; citing *Edwards*, 769 F.3d at 514). Notably, "*Gant* did not elaborate on the precise relationship between the 'reasonable to believe' standard and probable cause, but the Court's choice of phrasing suggests that the former may be a less demanding standard." *Edwards*, 769 F.3d at 514.

**SO ORDERED**.

Dated: July 3, 2024

_____
DAVID W. DUGAN
United States District Judge